UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID S. HARVEY,

        Plaintiff,

   v.

JO ANNE B. BARNHART, Commissioner of Social Security,

        Defendant.

CASE NO. C04-5342KLS

ORDER AFFIRMING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff, David S. Harvey, has brought this matter for judicial review of the denial of his application for disability insurance benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is thirty-three years old.[1] Tr. 21. He has a high school education, having taken special education classes, and has had vocational training in masonry. Tr. 55, 439, 441. He has past work

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

experience as an apprentice cement mason, a food merchandiser, a road show music manager, and a sales representative. Tr. 60.

Plaintiff filed an application for disability insurance benefits on April 17, 2001, alleging disability apparently as of both October 5, 1981, and October 28, 2000, due to a learning disability and impairments in his back and hand. Tr. 45, 59. His application was denied initially and on reconsideration. Tr. 21-22, 24-27, 30-32. Plaintiff requested a hearing, which was held on April 21, 2003, before an administrative law judge ("ALJ"). Tr. 433. At the hearing, plaintiff, represented by counsel, appeared and testified. Tr. 433-59. Also at the hearing, plaintiff amended his alleged onset date of disability to September 28, 2000. Tr. 438.

On July 16, 2003, the ALJ issued a decision finding plaintiff not disabled. Tr. 19-20. Specifically, the ALJ found in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of lumbar spine degenerative disk disease, status post successful surgery for L4-5 herniation in 1995, and dominant right hand injury with permanent American Medical Association impairment ratings of 1% for the hand as well as 5% for the little finger due to transverse sensory loss of the tip;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform the full range of light work, which precluded him from performing his past relevant work; and

(5) at step five, plaintiff was capable of performing other work existing in significant numbers in the national economy.

Tr. 15, 19-20. Plaintiff's request for review was denied by the Appeals Council on April 16, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 6-8; 20 C.F.R. §§ 404.981.

On June 14, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1). Plaintiff argues that decision should be reversed and remanded for an award of benefits, for the following reasons:

(a) the ALJ failed to adequately address plaintiff's pain symptoms and erred in discounting his credibility;

(b) the ALJ failed to adequately consider the combined effect of plaintiff's physical and mental impairments at step three of the disability evaluation process; and

(c) the ALJ erred in not obtaining the testimony of a vocational expert at step five of the disability evaluation process.

For the reasons set forth below, however, the undersigned finds the ALJ properly determined plaintiff to be not disabled.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on or before" the date his insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was December 31, 2000. Tr. 14, 21. Because, as explained below, plaintiff has failed to establish he was disabled prior to or as of that date, he is not disabled and therefore not entitled to disability insurance benefits. Tidwell, 161 F.3d at 601.

II.  The ALJ Adequately Addressed Plaintiff's Pain Testimony and Properly Assessed His Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a

claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Lester</u>, 81 F.3d at 834; <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

A.  <u>There Is No Affirmative Evidence of Malingering</u>

The first issue that needs to be determined is whether there is affirmative evidence in the record that plaintiff was malingering. Defendant argues there is such evidence, pointing to the statement of Dr. Robert G. Hoskins, a non-examining consulting physician, that there is "[s]ome gain seeking" behavior. Tr. 201. The substantial evidence in the record, however, fails to support Dr. Hoskins' statement or show plaintiff was malingering. Indeed, no other physician has made such a finding.

Other medical evidence in the record, furthermore, indicates plaintiff was not malingering. During a physical capacities evaluation performed in mid-April 2001, for example, plaintiff was noted to be "very cooperative," "no inconsistencies" were observed, and he was believed to have "put forth maximal effort." Tr. 151, 164. Plaintiff was described as being cooperative during a pain rehabilitation evaluation done in late October 2002. Tr. 348. During a work conditioning program evaluation completed in early January 2003, again "[n]o inappropriate illness behaviors were noted" or "out of proportion" to plaintiff's stated pain complaints, nor did there appear to be any "lack of maximal effort." Tr. 107.

REPORT AND RECOMMENDATION
Page - 4

B.  Plaintiff's Pain Tesimony

In his decision, the ALJ found plaintiff's representations "of disabling pain and other symptoms" to be not credible prior to or on his date last insured. Tr. 17. Plaintiff argues the ALJ summarily discarded his pain testimony, despite substantial evidence in the record to support it. Plaintiff further argues the record contains a significant history of pain in his right hand and back stemming from injuries he received prior to his date last insured. The undersigned finds, however, that while there is evidence plaintiff reported having pain in his right hand and low back prior to and after his date last insured, it fails to show that he currently is suffering from a disability which has existed continuously since on or before that date.

Much of the medical evidence in the record post-dates plaintiff's date last insured. Medical reports "containing observations made after the period for disability are relevant to assess the claimant's disability" during that period. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988); Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir. 1975). Because such reports "are inevitably rendered retrospectively," they "should not be disregarded solely on that basis." Smith, 849 F.2d at 1225 (citing Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985)). However, "claimants who apply for benefits for a current disability after the expiration of their insured status" will be entitled to them only if they can "prove that the current disability has existed continuously since a date on or before the date that their insurance coverage lapsed." Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1462 (9th Cir. 1995). Here, the medical reports in the record do not establish such continuity.

The medical evidence in the record shows that plaintiff's current complaints stem primarily from the period after his insured status already had expired. It was reported in early January 1990, that plaintiff had a history of scoliosis and arthritis, and that a disc in his lumbar spine had "deteriorated quite severely." Tr. 193-94. It was noted that plaintiff was not supposed to run to avoid jarring his spine, that he used two different types of back braces when lifting weights, and that he received therapy when his back symptoms warranted. Tr. 194. In early April 1995, however plaintiff underwent a surgical procedure on his lumbar spine for a herniated disk, and he was noted to be improving and to have made an excellent recovery, with good range of motion, shortly thereafter. Tr. 330, 337-39, 341.

Plaintiff did not report, and the record fails to reveal that he experienced, any significant, let alone disabling, complaints or pain symptoms until he injured his hand at work in late September 2000. Tr. 182.

REPORT AND RECOMMENDATION
Page - 5

1    Plaintiff did report further back pain symptoms prior to his date last insured in part due to a motor vehicle
2    accident he was involved in also in late September 2000. Tr. 131, 305-06, 308-12.  However, he reported as
3    well in early May 2001, that while he had "pain down the anterior lateral aspect of the right thigh prior to
4    his back surgery in 1995," since that time he had been "fine" until he hurt his back again in mid-April 2001,
5    during a physical capacities evaluation. Tr. 134.

6          In early December 2001, furthermore, plaintiff reported that prior to his mid-April 2001 physical
7    capacities evaluation he felt "his back was fine and capable of doing heavy work." Tr. 375.  Indeed, he
8    indicated that he "was better and was able to work heavy construction jobs." Tr. 377.  Two specialists in
9    neurology and orthopedic surgery thus deemed him to be "essentially recovered completely from this low
10   back surgery because he went back to work at a physically demanding job and worked performing heavy
11   labor from 1995 until his September 2000 [right hand] injury." Tr. 379-80.

12         In late January 2002, Dr. Jos A. Cove, one of plaintiff's treating physicians, also noted that while
13   "he did have some degree of chronic back pain prior to that [physical capacities evaluation], he had been
14   able to work and was physically very active doing mountain biking and snowboarding." Tr. 402-03.  The
15   physical capacities evaluation itself showed plaintiff to be capable of performing medium to heavy work at
16   that point in time. Tr. 164-65.  Even after he injured his back during the physical capacities evaluation, the
17   medical evidence in the record reveals that for the most part plaintiff's back-related impairment was far
18   from disabling and did not prevent him from performing <u>all</u> work. <u>See</u> Tr. 108-09, 134, 197-200, 254, 342-
19   43, 345, 349-50, 361-63, 366, 370, 378-80, 383-86, 388-93, 394, 396-404, 406.

20         Thus, for example, many of his physicians still felt plaintiff to be capable of working.  In late July
21   2001, further vocational assistance was recommended to place plaintiff "in a job that would be suitable for
22   him." Tr. 254.  In late October 2002, it was thought that while he was not likely to return to his past work
23   as a cement mason, plaintiff still could "sustain regular employment in the light category of work." Tr. 349.
24   In early December 2002, plaintiff did not seem to be in "any particular physical difficulties," and he was
25   deemed to be capable of working in a "sedentary to medium job capacity, with no lifting of greater than 25
26   pounds on a repetitive, continuing basis." Tr. 366, 370.  Indeed, in mid-December 2002, plaintiff's general
27   physical condition was noted to be "unremarkable." Tr. 406.

28         With respect to plaintiff's right hand impairment, the medical evidence in the record shows that the

REPORT AND RECOMMENDATION
Page - 6

limitations stemming therefrom also are far from disabling. For example, x-rays and other clinical findings in October and mid-November 2000, were relatively unremarkable, and plaintiff was told he could return to work on a half-time basis. Tr. 184, 186. Similar findings were made in late November and December 2000, and plaintiff was released to work full-time. Tr. 185. Essentially normal findings again were made in early February 2001. Tr. 182-83. It was felt plaintiff would "be able to make a full return to work with no restriction," following six weeks of aggressive upper extremity conditioning. Tr. 183.

Plaintiff was noted to be doing "very well" in hand therapy in early March 2001, with "[i]mproving grip strength and function." Tr. 175. Again, it was felt he would be able to make "a full return to work," following one more month of strengthening. Id. Although plaintiff was found to be incapable of returning to "his original job of injury" due to continuing "significant difficulty with grip and lifting," it still was felt he would be able to obtain a new job following retraining. Tr. 170. This last opinion was expressed once more in late July 2001. Tr. 254.

During the physical capacities evaluation in mid-April 2001, plaintiff was found to be capable of performing "forceful gripping" and grasping on a frequent basis throughout an eight-hour work day. Tr. 150, 164. He also could finger, feel and pinch on a continuous basis throughout an eight-hour work day. Id. In early December 2001, plaintiff was noted to have "full digital range of motion and full wrist range of motion, full grip and release bilaterally." Tr. 378. In addition, sensation was "normal" in plaintiff's upper extremities, except for "the tip of the little finger on the right hand." Id. In mid-December 2001, plaintiff was found to have no manipulative limitations. Tr. 199.

During a pain rehabilitation evaluation performed in late October 2002, the only impairment noted in plaintiff's right hand was a slight decrease in sensation in the tips of the fourth and fifth digits. Tr. 344. In early December 2002, plaintiff again displayed full range of motion in his right wrist, as well as in his right thumb, index, middle, and ring fingers, and he was able to bring the tips of the fingers of his right hand into his palm "easily, without difficulty." Tr. 361-62. While sensation over the tip of his right little finger was impaired, plaintiff's "small" finger showed "full extension" as well. Tr. 362-63.

Plaintiff argues correctly that his pain testimony may not be discredited merely because his reported degree of pain is not supported by "objective medical findings." Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). In Fair, the Ninth Circuit also stated, however, that if despite the claimant's claims of pain, he or she "is able to perform household chores and other activities that involve many of the same physical tasks as a

REPORT AND RECOMMENDATION
Page - 7

particular type of job, it would be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant form working." Id. at 603 (emphasis added).

Here, as discussed above, plaintiff was able to perform heavy construction work, as well as other highly physical activities such as biking and snowboarding, at least up until his mid-April 2001 physical capacities evaluation. Tr. 375, 377, 379-80, 402-03. Indeed, plaintiff himself admitted he was doing "fine" physically until that point in time, and was capable of doing such work. Tr. 134, 377. Thus, if plaintiff was capable of performing heavy work through his date last insured, he surely also was capable of performing at the light exertional level as found by the ALJ. Tr. 18. As such, it would be "far fetched" for the ALJ to conclude plaintiff's pain prevented him from working as of or prior to his date last insured.

    C.    The ALJ's Other Reasons for Discounting Plaintiff's Credibility

The ALJ discounted plaintiff's credibility in light of the objective medical evidence in the record concerning his allegedly disabling impairments. Tr. 17–18. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). As discussed above, the medical evidence in the record contradicts plaintiff's assertions of disabling pain. Thus, the ALJ did not err in discounting plaintiff's credibility for this reason.

The ALJ also discounted plaintiff's credibility because he was not taking medications for his right hand or spine "that indicated disabling pain" prior to his date last insured. Tr. 18. Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair, 885 F.2d at 603. On the other hand, if the claimant provides evidence of a good reason for not taking medication, his symptom testimony cannot be rejected because he failed to do so. Smolen, 80 F.3d at 1284.

Although plaintiff argues the record shows he was taking significant amounts of medication for his pain, such was not the case prior to his date last insured. For example, while medical reports in the record do indicate that plaintiff has been prescribed pain medication, most of those reports were issued after his insured status had expired. Tr. 134, 204, 336, 342, 383-84, 387, 390, 393, 396-400, 402, 404-06. Further, it does not appear plaintiff requires the level of pain medication he asserts he needs, as he was told in late August 2002, that "continued narcotic medication" was not appropriate, and that "[a]nti-inflammatories

1   combined with Tylenol should be the mainstay of long term treatment." Tr. 394.

2   The ALJ further noted that plaintiff "did not seek care or medication for any mental impairment until over two years after expiration of his insured status." Tr. 18. The substantial evidence in the record supports the ALJ's finding. Tr. 204-221, 342-51, 407-08, 410-424. In late July 2001, it was noted that plaintiff was not taking any antidepressant, antianxiety agent or other psychotropic medication. Tr. 204. At that time, plaintiff also stated he was "not currently in psychiatric care," and denied having any "significant past psychiatric history, hospitalizations, inpatient or outpatient care." Tr. 205.

Plaintiff argues that it is not appropriate for an ALJ to discount the credibility of a claimant who has a mental impairment for failure to seek medical treatment for that impairment, citing to Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). The Ninth Circuit in Nguyen, however, criticized the ALJ in that case for using the claimant's failure to seek treatment as substantial evidence for rejecting the opinion of an examining psychologist. Id. Likewise, in Regennitter v. Commissioner of the Social Security Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999), which plaintiff also cites, the Court of Appeals held the ALJ erred in rejecting the opinion of an examining medical expert on the basis that the claimant, due to poverty, failed to seek mental health treatment. Id.

It is true the Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints," because mental illness "is notoriously underreported," and "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Id. (citations omitted). Here, however, there is no medical evidence in the record that plaintiff had a disabling mental impairment on or prior to his date last insured, or that he sought treatment for such an impairment. It is one thing to refrain from rejecting medical or other evidence of a claimant's mental impairments based on the failure to seek treatment therefore. It is quite another to prohibit an ALJ from considering such a failure in assessing a claimant's credibility, particularly when there is no medical evidence in the record to support the claimant's allegation of disability due to such impairments.

To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability

1  benefits, and "many home activities may not be easily transferable to a work environment." Id.

2        Here, the ALJ discounted plaintiff's credibility in part due to his activities of daily living. Tr. 18. For
3  example, the ALJ noted that prior to the expiration of his insured status, plaintiff "resumed work as a
4  cement mason." Id.  As discussed above, the evidence in the record, and plaintiff himself admitted, that he
5  was capable, and did, heavy construction work prior to and through his date last insured. Tr. 375, 377, 380,
6  402-03.  Plaintiff also has reported engaging in snowboarding and mountain biking prior to his mid-April
7  2001 physical capacities evaluation. Tr. 402-03.  In early December 2002, he reported his hobbies included
8  bike riding, working on cars, snowboarding and "playing with kids." Tr. 360.

9        Thus, although plaintiff may have testified at the hearing that he can no longer mountain bike, camp
10 or play with his child (Tr. 448-49), the evidence in the record shows that he could do so both on and after
11 his date last insured.  Indeed, in mid-April 2001, plaintiff reported that he was "grossly Independent [sic]
12 with his daily life skills." Tr. 139.  In early January 2003, plaintiff again reported "independence in self-care
13 activities, light household chores, and light shopping activities." Tr. 105.  Although he also reported at that
14 time experiencing a significant increase in symptoms when doing his activities of daily living, plaintiff did
15 state that he was able to do them. Tr. 108.

16       The evidence in the record indicates, furthermore, that plaintiff "helps with the cooking and cares for
17 his son's needs" when his son is staying with him. Tr. 207.  The ALJ noted this in his decision, as well as
18 the fact that plaintiff was capable of managing his finances. Tr. 18.  Plaintiff argues these activities do not
19 indicate an ability to work, asserting that his son only stays with him on the weekends. Tr. 455.  While it is
20 not clear that these activities alone establish that plaintiff is capable of performing work on a full-time basis,
21 they do indicate, along with the other activities noted above, that he was able to function at a much higher
22 level than he has alleged both prior to and after his date last insured.

23 III.    <u>The ALJ Properly Found None of Plaintiff's Impairments Met or Equaled Any Listed Impairment</u>

24       At step three of the disability evaluation process, the ALJ must evaluate the claimant's impairments
25 to see if they meet or equal any of the impairments listed in 20 C.F. R. Pt. 404, Subpt. P, App. 1. 20 C.F.R
26 (the "Listings"). § 416.920(d); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the
27 claimant's impairments meet or equal a listed impairment, the claimant is deemed disabled. Id.  The burden
28 of proof is on the claimant to establish he meets or equals any of the impairments in the listings. <u>Tacket</u>, 180

REPORT AND RECOMMENDATION
Page - 10

F.3d at 1098.

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id. Further, an impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1993 WL 31248 *2.

Plaintiff argues the ALJ erred in not finding that he met the requirements for an affective disorder under 20 C.F.R. Part 404, Subpart P. Appendix 1, § 12.04, asserting the ALJ failed to take into account his severe psychological problems and his learning disability. As discussed above, however, except for plaintiff's learning disorder, all of the medical reports in the record concerning his mental impairments were issued well after plaintiff's date last insured. See Tr. 204-221, 342-51, 407-08, 410-424. None of those reports make retrospective diagnoses with respect to the period prior to, or otherwise indicate that plaintiff was disabled on or before, the expiration of his insured status. Indeed, one of the psychiatrists in the record who examined plaintiff opined in mid-March 2003, that he did not meet any of the "B" criteria for an affective disorder. Tr. 415, 418.

In addition, although it is true that plaintiff was diagnosed with a learning disorder prior to his date last insured (Tr. 195), there is no indication in the medical evidence in the record that this disorder rose to the level of a listed impairment. The ALJ, furthermore, did take plaintiff's learning disorder into account when he deemed plaintiff to have a "limited or less education," and restricted him to unskilled work, even though plaintiff had a history of "extensive highly skilled work in masonry." Tr. 18-19. Accordingly, the ALJ did not err in concluding that the medical evidence in the record failed to establish an impairment or combination of impairments that met or equaled any listed impairment. Tr. 17.

IV.  The ALJ Properly Found Plaintiff Not Disabled at Step Five of the Disability Evaluation Process

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d)-(e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's

1  Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240
2  F.3d 1157, 1162 (9th Cir. 2000).
3        The Grids may be used only if they "*completely and accurately* represent a claimant's limitations."
4  Tackett, 180 F.3d at 1101 (emphasis in the original).  That is, the claimant "must be able to perform the *full*
5  *range* of jobs in a given category." Id. (emphasis in the original).  If the claimant "has significant
6  non-exertional impairments," however, reliance on the Grids is not appropriate. Ostenbrock, 240 F.3d at
7  1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's
8  functional capacity in ways not contemplated by Grids).
9        Here, the ALJ found that given plaintiff's age, education, past work experience, skills and residual
10 functional capacity (i.e. "full range of light exertion"), his "vocational-functional profile was consistent with
11 Rule 202.17, Table No. 2" in 20 C.F.R. Part 404, Subpart P, Appendix 2. Tr. 19.  The ALJ therefore found
12 that this rule directed that plaintiff "was not disabled within the meaning" of the Social Security Act and
13 regulations. Id.; See Tackett, 180 F.3d at 1101 (for each combination of factors, grids direct finding of
14 "disabled" or "not disabled" based on number of jobs in national economy in that category of physical
15 exertion requirements).
16       Plaintiff argues the ALJ should have consulted a vocational expert, instead of relying on the Grids.
17 Specifically, plaintiff asserts the evidence in the record shows he has significant non-exertional limitations,
18 including pain and various mental health limitations, and the combination of these limitations severely
19 restrict his functional capacity.  As discussed above, however, the ALJ did not err in discounting plaintiff's
20 credibility regarding his pain and symptom testimony.  Indeed, the evidence in the record shows plaintiff had
21 no significant non-exertional limitations on or before his date last insured.
22       Plaintiff further argues the ALJ erred in not specifying what jobs in the national economy he was
23 capable of performing.  However, where reliance on the Grids is appropriate, as it is here, the ALJ need not
24 specify which jobs the claimant can perform. See Tackett, 180 F.3d at 1101; Ostenbrock, 240 F.3d at 1162
25 (where vocational expert testimony is used at step five, vocational expert must identify specific job or jobs
26 in national economy claimant can perform).  The ALJ thus did not err in making the more general finding
27 that plaintiff was not disabled within the meaning of the Social Security Act and regulations pursuant to 20
28 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.17 (Table No. 2). Tr. 19.

REPORT AND RECOMMENDATION
Page - 12

## CONCLUSION

Based on the foregoing discussion, the court finds the ALJ properly determined plaintiff was not disabled. Accordingly, the ALJ's decision is affirmed.

DATED this 2nd day of August, 2005.

Karen L. Strombom
United States Magistrate Judge